# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**EDWARD LEE LEWIS,**

    **Plaintiff,**

**v.**                                                **Civil action no. 5:11cv54**
                                                             **(Judge Bailey)**

**FEDERAL BUREAU OF PRISONS,**
**TERRY O'BRIEN,**
**UNKNOWN JOHN DOE ASSOCIATE WARDENS,**
**CAPTAIN BERGAMI,**
**SIS SERRANO,**
**SIS LT. FISHER,**
**JOHN AND JANE DOE SIS STAFF,**
**D-UNIT MANAGER WITT,**
**SHU LT. HUFFMAN,**
**SHU LT. BRENSON,**
**JOHN AND JANE DOE SHU STAFF,**
**P.A. AZUMA,**
**Dr. DUBERSAC,**
**MEDICAL STAFF MS. BROWN-STOBBY,**
**JOHN AND JANE DOE MEDICAL STAFF,**
**JOHN AND JANE DOE CORRECTIONAL STAFF,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On April 1, 2011, the *pro se* plaintiff, Edward Lee Lewis, initiated this case, which was docketed as a civil rights complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and authorized suits against federal employees in their individual capacities. On May

1

20, 2011, the plaintiff was granted leave to proceed *in forma pauperis*. On June 9, 2011, the plaintiff filed an amended complaint. On July 23, 2011, the plaintiff paid his required initial partial filing fee. On August 23, 2011, the plaintiff was granted leave to file a second amended complaint. On February 22, 2012, the undersigned conducted a preliminary review of the file and ordered that a sixty day summons be issued for each of the individual defendants other than the various John and Jane Doe staff. On July 12, 2012, the defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. On July 25, 2012, the undersigned issued a Roseboro Notice. On November 26, 2012, the plaintiff filed a response. Accordingly, this matter is now ready for a Report and Recommendation.

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff alleges that he was placed on protective custody in the special housing unit ["SHU"] at USP Hazelton on June 3, 2010. The plaintiff maintains that he was placed on protective custody because staff was aware that "he was helping solve a murder investigation in the Southern District of West Virginia." (Doc. 37, p.1). The plaintiff further alleges that he was placed in a cell in the SHU with an inmate that was not on protective custody and was told that he had no choice but to cell with this inmate. The plaintiff indicates that on August 5, 2010, he was called out for a legal visit with the West Virginia State Police regarding the murder investigation. The plaintiff alleges that SIS staff advised him that the legal visit would be kept confidential. However, the plaintiff maintains that the following day, the SHU inmate orderly came to his cell door and spoke to his cell mate through the door. The plaintiff further maintains that the orderly had a SHU status sheet which he held up to the window and then slid under the door to his cell mate. The plaintiff maintains that the SHU orderly stated (presumably through the door) that he had been told by the SHU staff that the plaintiff had a legal visit with the state police, and it concerned his involvement with a murder investigation. The plaintiff alleges

2

that shortly after the SHU orderly left, his cell mate grabbed him and pulled him from the upper bunk to the floor and punched him twice in the face. The plaintiff alleges that he was then hospitalized from August 6, 2010 to August 9, 2010 with a broken eye socket. Therefore, although not specifically stated as such, it would appear that the plaintiff is alleging that staff at USP Hazelton failed to protect him from an assault by another inmate, or that staff at USP Hazelton were responsible for the assault because they did not keep secret his involvement with a murder investigation by the West Virginia State Police.

The plaintiff also alleges that actions by the staff at USP Hazelton prevented him from having surgery to repair his eyelid. More specifically, the plaintiff alleges that he was approved for the surgery but was transferred from USP Hazelton before it could occur. In addition the plaintiff claims that he was told that he would not be transferred from USP Hazelton until he had a further meeting with the West Virginia State Police. The plaintiff maintains that visit was scheduled for October 13, 2010, but he was transferred one day earlier on October 12, 2010. The plaintiff alleges that the medical staff at USP Hazelton failed to keep him at USP Hazelton until the surgery could be performed.

Finally, the plaintiff alleges that he was eventually transferred to USP Terre Haute where the SHU inmate orderly from USP Hazelton had also been transferred. The plaintiff alleges he was assaulted again at USP Terre Haute and appears to allege that this same inmate alerted others that he was cooperating with the West Virginia State Police. The plaintiff maintains that when he was transferred, staff at USP Hazelton failed to put information in his file regarding the first assault, which resulted in him being exposed to the same SHU inmate orderly.

For relief, the plaintiff seeks compensation in the amount of $100,000. In addition he seeks an order directing the BOP to insure his safety and provide him the medical treatment he is being denied for his injuries.

**B. The Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment**

3

In response to the plaintiff's complaint, the defendants assert that the plaintiff failed to exhaust his administrative remedies with respect to his claim that staff allowed the SHU inmate orderly to learn of the legal visit with the West Virginia State Police. In addition, the defendants assert that the plaintiff failed to even attempt exhaustion of his administrative remedies regarding the other allegations in his complaint In the alternative, the defendants alleges that the plaintiff's complaint should be dismissed as follows:

(1) Lack of personal involvement on the part of defendants Driver, Bergami, Petrisko, Serrano and Huffman;

(2) The plaintiff's complaint with respect to missing the second legal visit with the West Virginia State Police and denial of medical treatment fail to allege a violation of his constitutional rights;

(3) The plaintiff's complaint with respect to the denial of medical treatment does not demonstrate a violation of his Eighth Amendment rights;

(4) The defendants are entitled to qualified immunity.

**C.  The Plaintiff's Response**

In response to the defendants' motion, the plaintiff reiterates the substance of his complaint. In addition, he takes exception to each and every declaration tendered by the defendants and attempts to explain why they are either lies or demonstrate that each defendant is personally liable for the assault, inadequate medical care, transfer to the same institution as the SHU inmate orderly, and transfer prior to his scheduled interview with the West Virginia State Police. However, the plaintiff makes no attempt to establish that he did, in fact, exhaust his administrative remedies with regard to the allegations raised in his complaint.

### III.  Standard of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)).

5

In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in <u>Ashcroft v. Iqbal</u>, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. <u>Id</u>.

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for

trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

## IV. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

---

[1] Id.

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint to the warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within 20 days of the warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; <u>Gibbs v. Bureau of Prison Office, FCI</u>, 986 F.Supp. 941, 943 (D.Md. 1997).

Attached to the defendants' motions is a Declaration from Marvella Heard, who is a Legal Assistant and Administrative Remedy Clerk for the Mid-Atlantic Regional Office of the BOP. Her Declaration and the attachments thereto, establish that since the plaintiff's designation to the BOP on February 4, 2003, through the date of her Declaration June 19, 2012, he had filed a total of twenty-three (23) administrative remedy submission. Of those, six (6) concerned an orderly at USP Hazelton possessing classified information regarding the plaintiff which caused him to be the victim of an assault.

More specifically, on September 22, 2010, the plaintiff submitted Remedy ID No 608226-F1, alleging that an orderly in the SHU possessed an inmate status sheet containing classified information about him. This submission was answered by way of explanation on September 27, 2010, at the institutional level.(Doc. 106-2, p. 19). On October 12, 2010, the plaintiff submitted Remedy ID No. 608226-R1 at the Mid-Atlantic Regional Office. On October 15, 2010, the Regional Office rejected

this submission because the plaintiff submitted more than the allotted number of pages for his appeal. (Doc. 106-2, p. 20). On November 30, 2012, the plaintiff submitted Remedy ID No. 608226-A1 at the Central Office level. This submission was rejected by the Central Office on December 30, 2010, because the plaintiff had filed his submission at the wrong level. (Doc. 106-2, p. 21). On January 20, 2011, the plaintiff submitted Remedy ID No. 608226-R2 at the North Central Regional Office. This submission was rejected on January 20, 2011, because the plaintiff's submission exceeded the allotted number of continuation pages. He was instructed to resubmit his appeal on the proper forms within fifteen (15) days of the rejection notice. (Doc. 106-2, p. 22). On February 14, 2011, the plaintiff submitted Remedy ID No. 608226-R3 at the North Central Regional Office. This submission was rejected on February 14, 2011, because he exceeded the allotted number of continuation pages. He was instructed to resubmit his appeal within ten (10) days of the date of the rejection.(Doc. 106-2, p. 23). On March 14, 2011, the plaintiff submitted Remedy ID No. 608226-R4 at the North Central Regional Office. On April 3, 2011, this Remedy submission was answered by information only. (Doc. 106-2). The plaintiff did not file an appeal with the Central Office.

This administrative remedy history establishes that the plaintiff successfully filed a BP-9 at the Institutional Level on September 22, 2010, and successfully filed a BP-10 at the Regional level on March 14, 2011. However, he never successfully filed a BP-11, and therefore, he did not properly exhaust his administrative remedies with respect to his claim that the SHU inmate orderly had access to his status sheet. Furthermore, the plaintiff failed to file a single administrative remedy regarding the other allegations in his complaint. Because the PLRA mandates the exhaustion of all available administrative remedies prior to bringing an action under <u>Bivens</u>, the plaintiff's complaint must be dismissed.

When a prisoner files a complaint without first exhausting administrative remedies, dismissal without prejudice is appropriate. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004); see also Johnson v. Cannon, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010)(unpublished), aff'd, 390 F. App'x 256 (4th Cir. 2010)(per curiam)(unpublished); Stokes v. Moore, No. 5:08-CT-2045-FL, slip op. At 4 (E.D.N.C. Jan. 26, 2010)(unpublished); Shouse v. Madison, 2010 WL 276543, at *1 (W.D. Va. Jan 19, 2010) (unpublished). Doing so allows the prisoner an opportunity to exhaust the administrative process and then file a new suit if the outcome of the administrative process is not favorable to the prisoner.

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Doc. 105) be **GRANTED IN PART AND DENIED IN PART** and this action be **DISMISSED WITHOUT PREJUDICE**.

Within fourteen (14) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. In addition, the clerk is directed to send a copy to counsel of record as provided in the

Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: December 4, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE